UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 16-10137-LTS |
| | ) | |
| (1) KENNETH BRISSETTE, and | ) | |
| (2) TIMOTHY SULLIVAN | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* TO PRECLUDE USE OF THE TERM "CITY HALL" TO REFER
GENERALLY TO DEFENDANTS, CITY EMPLOYEES OR CITY DEPARTMENTS**

The United States of America, by Andrew E. Lelling, United States Attorney, and Laura J. Kaplan and Kristina E. Barclay, Assistant United States Attorneys for the District of Massachusetts, hereby opposes Defendants' Motion *in Limine* to Preclude Use of the Term "City Hall" to Refer Generally to Defendants, City Employees or City Departments (Docket No. 245) (the Motion). The Defendants' argument in support of the Motion goes too far, by alleging that the government intends to offer false or inaccurate testimony in violation of their due process rights and prosecutorial standards. The government intends to elicit truthful testimony from its witnesses about what harm they believed – based on the words and actions of the defendants, their coconspirator, other City of Boston employees and Mayor Martin J. Walsh himself – the defendants could inflict on Crashline Productions if the company did not agree to hire union workers for the September 2014 Boston Calling concert. Whether that belief was accurate is irrelevant; whether the belief was reasonable under the circumstances is the question a jury will need to answer at trial.

The defendants' Motion is based entirely on the premise that they had no "regulatory authority" over the permits that Crash Line needed for the Boston Calling music festival.

1

However, it is irrelevant whether the defendants actually had "regulatory authority" over the entertainment license, which was the last piece of paper Crash Line needed for its September 2014 concert when its representatives were called into City Hall to talk about union workers. "To establish extortion through fear of economic loss, the government must "show that the victim believed that economic loss would result from his ... failure to comply with the alleged extortionist's terms, and that the circumstances ... rendered that fear reasonable." *United States v. Rivera Rangel*, 396 F.3d 476, 483 (1st Cir. 2005) (quoting *United States v. Bucci*, 839 F.2d 825, 828 (1st Cir. 1988)); *see also United States v. Capo*, 817 F.2d 947, 951 (2d Cir. 1987) ("[T]he proof need establish that the victim *reasonably* believed: first, that the defendant had the power to harm the victim, and second, that the defendant would exploit that power to the victim's detriment." (emphasis in original)).

The government's anticipated evidence will demonstrate that Brian Appel and Mike Snow reasonably believed that the defendants had the power to influence permitting and licensing. First and foremost, at a February 2014 meeting, Mayor Walsh told Crash Line representatives that if they ever needed anything, they "were in good hands with" Kenneth Brissette, or that Brissette was "your guy," and that they should also contact the Mayor directly if they needed anything. Appel also explained that Brissette ran the Special Events meetings in 2014, attended by Crash Line and the City agencies from which Crash Line needed permits, which were the first step in the entertainment license process. In addition, Brissette was present for and participated in an August 19, 2014 meeting with Appel and Snow at which the permitting difficulties and Brissette's request that the company use union labor were discussed. In fact, the government anticipates that its evidence will demonstrate that, for Crash Line representatives and even for those working at City Hall, the lines between who had "regulatory authority" for

permits and the entertainment license and those who did not was blurred, and not as clear-cut as the defendants argue in their Motion.  For example, despite Patricia Malone's insistence that she had sole authority over the entertainment license for Boston Calling, she admitted that Mayor Walsh called her before the May 2014 concert and asked her to change the hours for alcohol service at the concert, and that she changed the hours on the entertainment license at his request.

Moreover, the defendants ignore the undisputed evidence that it was not just Crash Line's *belief* that the defendants could influence their permits and licenses.  In fact, Brissette actually was involved in the permitting and licensing process for Boston Calling.  Brissette ran the Special Events meetings at which permits were discussed and debated.  Brissette's boss, John Barrows, testified that Brissette "helps to walk out the permitting process for big events, for large events" and that in 2014, Brissette was responsible for coordination of permits other than those related to the Boston Redevelopment Authority and liquor licensing.  Brissette himself told agents during a July 30, 2015 interview that he helped the permit process become more streamlined and easier to get through.  With respect to Boston Calling specifically, Barrows testified that Brissette talked to him about Crash Line being upset with permitting.  The day after the August 19, 2014 meeting with Crash Line described above, Brissette was included on an email from Coconspirator 1 regarding her contact with then-Boston Police Commissioner William Evans about Crash Line's concerns with the permits and licenses.[1]

That Brian Appel grouped City Hall departments into one entity, and did not see Brissette as solely being involved in Special Events (as opposed to Licensing and Consumer Affairs) is

---

[1] Notably, the defendants do not dispute that they had some authority over the grant of a long-term license agreement to use City Hall Plaza.  Parsing the use of "City Hall" during testimony regarding the permitting process would be confusing, given that the term "City Hall" may be used during testimony about the long-term license agreement.

not surprising, given Mayor Walsh's direction to use Brissette as Crash Line's liaison with City Hall and Brissette's involvement in the process described above.  In fact, when asked how he felt about the September 2, 2014 meeting at which the defendants demanded that Crash Line hire IATSE workers for the imminent concert, Appel told investigators, "These guys are my landlords," and he believed Brissette and Sullivan could have issued permits with reduced times that would ultimately lead to the demise of Boston Calling.

The victims cannot tell their side of the Boston Calling story without using the term "City Hall" – during the events in question, both defendants were employees of the City of Boston, both defendants worked at City Hall, the September 2014 concert was set to take place on City Hall Plaza.  Moreover, the victims believed the defendants had the power to affect their permits, the entertainment license, and the long-term license agreement.  Even if the defendants did not have such power, the victims' truthful testimony about their perception at the time is critical evidence in an extortion case, and in no way infringes the defendants' Due Process rights or prejudices them in any way.  To the extent the victims use the term "City Hall" and the defendants feel clarification is necessary, the witnesses will be available for cross-examination.

WHEREFORE, for the reasons set forth herein, the government respectfully requests that the Court deny the Motion.

> Respectfully submitted,
>
> ANDREW E. LELLING
> United States Attorney
>
> By:    */s/ Kristina E. Barclay*
>        Laura J. Kaplan
>        Kristina E. Barclay
>        Assistant U.S. Attorneys
>        (617) 748-3100

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on the date below, this document was served on counsel for the defendants by electronic mail.

*/s/ Kristina E. Barclay*
KRISTINA E. BARCLAY
Assistant U.S. Attorney

Dated: May 31, 2019