UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 16-cr-10137-LTS |
| | ) | |
| KENNETH BRISSETTE and | ) | |
| TIMOTHY SULLIVAN, | ) | |
| | ) | |
| Defendants. | ) | |

**FINAL JURY CHARGE**
August 5, 2019

Members of the Jury:

You have now heard all the evidence in this case.  It is time for me to give you my final instructions on the law you must apply when considering the evidence and reaching your verdict.  You will notice that I'm going to be reading verbatim much of what I say to you now.  I do that because this is no time for creativity or spontaneity on my part.  Every criminal case is governed by very well-established legal principles.  This is not my law that I give to you now.  This is the law handed down to us by our Supreme Court, federal appellate courts, and the United States Congress, and it is very important that I give you the law fully and accurately.  So please bear with me if I appear to be reading at times and not speaking to you in a conversational way.

My instructions will be in three parts: first, general rules and legal principles that control your duties as jurors and your consideration of the evidence you have heard; second, specific definitions and legal principles related to the elements of the offenses charged in this case; and third, guidelines for how you are to conduct your deliberations and return a verdict.  I will give you a copy of these instructions to take with you into the jury room when you deliberate, so you should listen carefully but need not take notes as I read them to you.

# PART I

## Duty of the Jury to Find Facts and Follow Law

It is your duty to find the facts from all the evidence admitted in this case.  You, and you alone, are the judges of the facts.  My opinion about the evidence in this case, if I have one, is totally irrelevant.  You should not interpret anything I have said or done during the trial as indicating what I think about a witness or a piece of evidence or what I believe the verdict should be.  It is your job, not mine, to determine what the facts are in this case.

To those facts, you must apply the law as I give it to you.  The determination of the law is my duty as the judge.  It is your duty to apply the law exactly as I give it to you, whether you agree with it or not.  Just as no one may question the facts as you find them, you may not question the law as I give it to you.  You must decide the case solely on the evidence before you and according to the law as I give it to you.  The oath you took at the beginning of the case was a promise to do just that.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions any suggestions by me as to what verdict you should return; that is a matter entirely for you to decide.

## Presumption of Innocence and Proof Beyond a Reasonable Doubt

Every person accused of a crime is presumed to be innocent unless and until his or her guilt is established beyond a reasonable doubt.  Mr. Brissette and Mr. Sullivan are innocent in the eyes of the law unless and until you, the jury, decide by a unanimous vote that the government has proved their guilt beyond a reasonable doubt.  This presumption is not a mere

formality.  It is a cardinal principle in our justice system and a matter of the most important substance.

The presumption of innocence means that the burden of proof is always on the government to prove that Mr. Brissette and Mr. Sullivan are guilty of the crimes with which they are charged beyond a reasonable doubt.  This is a heavy burden, and one which never shifts to Mr. Brissette or Mr. Sullivan.  It is always the government's burden to prove each of the elements of each of the crimes charged beyond a reasonable doubt by the evidence and the reasonable inferences to be drawn from that evidence.  The law does not require Mr. Brissette or Mr. Sullivan to prove his innocence or to produce any evidence at all.

The presumption of innocence alone may be sufficient to raise a reasonable doubt and to require the acquittal of a defendant.  Mr. Brissette and Mr. Sullivan have the benefit of that presumption, and you are not to convict either defendant of any crime charged unless you are persuaded of his guilt of that charge beyond a reasonable doubt.

The term "reasonable doubt" is often used, but it is not easily defined.  Reasonable doubt exists when, after weighing and considering all the evidence in the case using your reason and common sense, you cannot say that you have a firm and settled conviction that a charge is true.

A reasonable doubt may arise not only from the evidence produced, but also from a lack of evidence.  Mr. Brissette and Mr. Sullivan have the right to rely upon the failure or inability of the government to establish beyond a reasonable doubt any essential element of a crime charged against them.  It is not necessary for you to conclude that Mr. Brissette or Mr. Sullivan is factually innocent in order to return a "not guilty" verdict.  Such a verdict means only that the prosecution has not met its burden of proving Mr. Brissette or Mr. Sullivan guilty beyond a reasonable doubt.

You may not convict Mr. Brissette or Mr. Sullivan based on speculation or conjecture. You may, however, draw reasonable inferences from the evidence. I will explain more about what types of inferences you may and may not draw shortly. The government has not met its burden, and you may not convict Mr. Brissette or Mr. Sullivan, if you decide that it is equally likely that he is guilty or not guilty. It is not sufficient for the government to establish a probability, even if it is a strong one, that a fact charged is more likely true than not true. That is not enough to meet the burden of proof beyond a reasonable doubt. On the other hand, there are very few things in this world that we know with absolute certainty, and the law does not require the government to offer proof that overcomes every possible doubt. It requires that the evidence exclude any reasonable doubt concerning Mr. Brissette's and Mr. Sullivan's guilt.

Whether the government has sustained its burden of proof does not depend upon the number of witnesses it has called or upon the number of exhibits it has offered, nor does it depend on the number of witnesses called by a defendant or the number of exhibits he offers. It depends instead upon the nature and quality of the evidence presented.

Again, Mr. Brissette and Mr. Sullivan are presumed to be innocent, and the government bears the burden of proving their guilt beyond a reasonable doubt. The government must meet this burden of proof as to each element of each crime charged, and as to each individual defendant. If, after fair and impartial consideration of all the evidence, you are satisfied beyond a reasonable doubt of Mr. Brissette's or Mr. Sullivan's guilt of a crime charged, you should vote to convict him of that crime. On the other hand, if, after fair and impartial consideration of all the evidence, you have a reasonable doubt as to Mr. Brissette's or Mr. Sullivan's guilt of a crime charged, it is your duty to acquit him of that crime.

**Defendant's Constitutional Right Not to Testify**

All criminal defendants, including Mr. Brissette and Mr. Sullivan, have a constitutional right not to testify. Like the presumption of innocence, this is a fundamental principle in our system of criminal justice. No inference of guilt, or of anything else, may be drawn from the fact that Mr. Brissette and Mr. Sullivan did not testify. For any of you to draw such an inference – or even to discuss in your deliberations either defendant's decision not to testify – would be wrong and would violate your oath as a juror.

There are many reasons why a defendant might not want to take the stand or might choose not to take the stand, not the least of which is that he doesn't have to. So, you may not consider that fact in determining the outcome of this case.

**What Is Evidence; Stipulations; Inferences**

The evidence in this case consists of: sworn testimony of witnesses, both on direct and cross-examination; the exhibits that have been received into evidence; and the facts to which the lawyers have agreed or stipulated. You should consider all of the evidence, no matter what form it takes, and no matter which party introduced it.

Although you may consider only the evidence presented in the case, you are not limited to the plain statements made by the witnesses or contained in the documents. In other words, you are not limited solely to what you see and hear as the witnesses testify. You also are permitted to draw any reasonable inferences you believe are justified in light of common sense and personal experience. An inference is a deduction or conclusion that may be drawn from the facts that have been established. Any inference you draw must be reasonable and based on the facts as you find them. Inferences may not be based on speculation or conjecture.

The government may ask you to draw one inference from certain evidence, while the defense may ask you to draw another inference from the same evidence.  It is for you, and you alone, to exercise your common sense and decide what inferences you will draw.

**Direct and Circumstantial Evidence**

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of a witness that the witness saw or did something. Circumstantial evidence is indirect evidence -- that is, proof of a fact or facts from which you could draw a reasonable inference that another fact exists, even though it has not been proven directly.

You all have experience in your everyday life drawing inferences based upon circumstantial evidence.  For instance, imagine it was sunny when you arrived here this morning, but just now someone walked into the courtroom wearing a wet raincoat and carrying a dripping umbrella.  Without any words being spoken, and without looking outside for yourself, you might draw the reasonable inference that it is now raining outside.  In other words, the facts of the wet raincoat and the dripping umbrella would be circumstantial evidence that it is raining.

You are entitled to consider both direct and circumstantial evidence.  Neither type of evidence is considered superior or inferior to the other.  The law permits you to give equal weight to both; it is for you to decide how much weight to give to any piece of evidence.

**What Is Not Evidence**

Certain things are not evidence. I listed them for you in my preliminary instructions at the start of the trial, and I'll remind you of them now:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses.

What they said in their opening statements, closing arguments, and at other times during

the trial was intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your collective memory of the facts controls.

(2)     Questions to the witnesses -- whether by the lawyers or by me -- are not evidence standing alone.  Again, the lawyers are not witnesses, and neither am I.  The question and the witness's answer, taken together, are the evidence.

(3)     Objections by lawyers are not evidence.  Lawyers have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the fact that an objection was made or by my ruling on it.  If I sustained an objection, you must ignore the question or exhibit and should not speculate or guess what the answer might have been or what the exhibit might have contained.

(4)     Anything you may have seen or heard when court was not in session is not evidence. You are to decide the case solely on the evidence received at trial.

(5)     Notes, if you have kept them, are not evidence.  They are a personal memory aid to be used to refresh your recollection of the evidence during the deliberations.  Do not assume simply because something appears in someone's notes – even your own – that it is necessarily what happened or was said in court.

(6)     The indictment is not evidence. I caution you, as I have before, that the fact that Mr. Brissette and Mr. Sullivan have had an indictment filed against them is not evidence of their guilt.  The indictment is simply an accusation, and the means by which the charges were brought before this court.  It proves nothing.

(7)     Anything that I have excluded from evidence or ordered stricken and instructed you to disregard is not evidence, and you must not consider it.

**Limiting Instructions as to Particular Kinds of Evidence**

At times, a particular item of evidence was received for a limited purpose only.  You may use such evidence only for that specific purpose, and not for any other purpose.  I have told you when that occurred and instructed you on the purposes for which each such item can and cannot be used.  You must adhere to those instructions when you consider those items during your deliberations.  Two of those instructions I remind you of now.

I instructed you more than once during the trial about evidence you heard regarding events that occurred in connection with the filming of "Top Chef" in Boston in 2014.  I remind you now that the charges here do not arise from those events.  You heard that evidence and may consider it only for limited purposes.

As I've said before, Mr. Brissette is not charged with committing extortion in connection with the "Top Chef" events, and he has never been charged with any crimes based on those events.  You may not consider the "Top Chef" evidence as proof that Mr. Brissette has a bad character or a propensity to commit crimes.  You may consider the evidence about what Mr. Brissette said and did in connection with "Top Chef" only to the extent you find that evidence helps you assess his knowledge and intent with respect to the Boston Calling events that are the focus of the charges in this case.

Likewise, Mr. Sullivan is not charged with committing extortion in connection with the "Top Chef" events, and he has never been charged with any crimes based on those events.  You may consider the "Top Chef" evidence against Mr. Sullivan only if you first find that he knew about those events at the time of the Boston Calling events that are the focus of the charges in this case.  If you so find, then you can consider the "Top Chef" evidence only to the extent you find that evidence helps you assess Mr. Sullivan's knowledge and intent with respect to the

8

Boston Calling events that are the focus of this trial.  You may not consider this evidence as proof that Mr. Sullivan has a bad character or a propensity to commit crimes.

Also, the government offered Exhibit 38, which is a memo Joyce Linehan wrote in February 2014.  That memo was admitted only as to Mr. Sullivan, who is identified as a recipient of the memo; you may consider it only against him, and only to the extent you find it helps you assess his knowledge and intent with respect to the charges in this case during the time period that is identified in the indictment.  It was not admitted, and you may not consider it, as evidence against Mr. Brissette, because there is no evidence suggesting he received or otherwise knew about it.

## Improper Considerations

You must decide this case solely upon the evidence.  You must not be influenced by any personal likes, dislikes, prejudices, or sympathies you may have about Mr. Brissette or Mr. Sullivan, any of the witnesses, or about the nature of the crimes that are charged.  You may not consider or be influenced by any possible punishment or other consequences that may be imposed on Mr. Brissette or Mr. Sullivan as a result of a conviction.  The duty of imposing sentence, if necessary, rests exclusively with me.  The question of possible punishment is of no concern to you and should not influence your deliberations in any way.  As I have explained, your function is to weigh the evidence in the case, and to determine whether the government has proved these defendants' guilt beyond a reasonable doubt relying only upon the evidence, and according to the law.

## Witness Credibility

Most evidence received in this case was offered through witness testimony.  As the jury, you are the sole judges of the credibility of the witnesses.  You do not have to accept the

testimony of any witness.  In deciding what the facts are, you must determine what testimony

you believe and what testimony you do not believe.  To do this, you must look at all the

evidence, drawing upon your common sense and personal experience.  You may choose to

believe everything a witness said, only part of it, or none of it.

In deciding whether to believe a witness's testimony, you may consider factors such as:

- the witness's conduct and demeanor while testifying;

- the witness's apparent fairness, or any bias he or she may have displayed;

- any interest you discern that the witness may have in the outcome of the case;

- any prejudice the witness may have shown;

- the witness's opportunity to see, hear, or know the things about which he or she testified;

- the reasonableness of the events that the witness related to you, in light of the other evidence which you believe;

- the quality of the witness's memory; and

- any other facts or circumstances disclosed by the evidence that tend to corroborate or contradict the witness's version of the events.

**<u>Prior Inconsistent Statements</u>**

You have heard at various times that certain witnesses who testified in this trial made

previous statements about the same subject matter as their trial testimony.  You may consider

those earlier statements to help you decide how much of the witnesses' testimony to believe.  If

you find that a witness's prior statement was not consistent with that witness's testimony at this

trial, then you should decide whether that affects the believability of that person's testimony.

Sometimes, of course, people make innocent mistakes; not every contradiction or inconsistency is necessarily important.  Again, you alone are the judges of the witnesses' credibility.

Some prior inconsistent statements may be used for purposes other than impeachment.  If you find that a witness has made inconsistent statements under oath on an earlier occasion, such as in a prior court proceeding, you may consider that earlier statement for its truth or falsity, the same as any testimony at this trial.

**Law Enforcement Witnesses**

You have heard the testimony of law enforcement witnesses, including Special Agent Kristin Koch and Commissioner William Evans.  You may accept or reject that testimony just like any other testimony or evidence in this case.  The fact that a witness may be employed as a government agent or law enforcement officer does not mean that his or her testimony is deserving of more or less consideration, or greater or less weight, than that of any other witness. Again, it is for you to decide whether to accept the testimony of any witness, and what weight, if any, to give that testimony.

**Statements by the Defendants**

You have heard evidence that Mr. Brissette and Mr. Sullivan made certain statements. The government claims that in those statements, Mr. Brissette and Mr. Sullivan admitted certain facts.  It is for you to decide: (1) whether Mr. Brissette and Mr. Sullivan made the statements; and (2) if so, how much weight to give them.  In making those decisions, you should consider all of the evidence about the statements, including the circumstances under which they may have been made, and any facts or circumstances tending to corroborate or contradict the version of events described in the statements.

**Exhibits and Exhibit Numbers**

The exhibits that have been admitted in evidence for your consideration will be given to you when you retire for your deliberations.  The numbers assigned to the exhibits are for convenience and to ensure an orderly procedure.  You should draw no inference from the fact that a particular exhibit was assigned a particular number, or that there may be gaps in the number sequence.

The exhibits admitted in this case include charts and summaries prepared by the government and shown to you during trial to explain facts contained in other documents.  You may consider those charts and summaries as you would any other evidence admitted during the trial, and you may give them whatever weight or importance, if any, you feel they deserve.

**Variance – Dates**

The government has charged Mr. Brissette and Mr. Sullivan with committing offenses "on or about" certain specific dates.  Those dates will be repeated for you in my instructions and on the special verdict form.  It does not matter if the indictment charges that a specific act occurred in or around a certain date, and the evidence indicates that, in fact, it was on another date.  The law only requires a substantial similarity between the date alleged in the indictment and the date established by testimony or exhibits.

**Individuals Not Charged or Not Called as Witnesses**

Some people who may have been involved in the events at issue in this case are not on trial here.  There is no requirement that every participant in a crime be charged and prosecuted.  Similarly, some people whose names you've heard during the course of this trial have not appeared to testify.  There is no requirement that every witness with relevant knowledge be called to testify in a criminal trial.

You should, however, remember my instruction that the law does not impose on Mr. Brissette or Mr. Sullivan the burden or duty of calling any witness or producing any evidence. The burden, at all times, remains with the government to prove beyond a reasonable doubt each defendant's guilt of each element of each crime charged.

## Multiple Defendants and Counts

This case involves two defendants who are charged in an indictment that contains two separate counts.  You must consider each count separately, and you must consider each defendant individually.  In other words, you must consider the respective culpability of each defendant for each count entirely separately.  When you do so, you should analyze what the evidence shows with respect to each defendant, setting aside any evidence admitted solely against the other defendant.

You may find Mr. Brissette guilty of both charges, not guilty of both charges, or guilty of one charge but not the other.  Likewise, you may find Mr. Sullivan guilty of both charges, not guilty of both charges, or guilty of one charge but not the other.  Your verdicts as to Mr. Brissette and Mr. Sullivan need not be the same; you may find one defendant guilty of a charge and the other not guilty of the same charge if that is what you decide is dictated by the evidence and the law.

13

## **PART II**

This concludes the first part of my instructions.  Before I explain to you the law governing the specific crimes charged in the Indictment, I want to clarify what is and is not your role.  You must determine whether the government has proven beyond a reasonable doubt that either defendant committed the crimes of Hobbs Act Extortion or Conspiracy to Commit Hobbs Act Extortion.  You are not empowered to enforce your own individual views of good government, and you are not authorized by way of federal criminal law to enforce state or local codes of conduct or ethics.

In particular, the indictment alleges that from on or about May 1, 2014, and continuing through September 30, 2014, Mr. Brissette and Mr. Sullivan, together with others, conspired to extort, and did extort, Crash Line Productions, thereby obstructing, delaying, or affecting commerce.  The government alleges that the defendants insisted that Crash Line hire workers through Local 11 to work at the September 2014 Boston Calling music festival, and that they induced Crash Line's consent to their demand by wrongfully using Crash Line's fear of economic harm related to certain permits and approvals Crash Line needed for the September 2014 festival, as well as Crash Line's efforts to secure an extension of a contract allowing it to conduct future concerts on City Hall Plaza.

Because both charges in this case turn on the underlying crime of extortion, I will instruct you about the elements of that crime in detail first.  Then, I'll explain the law relating to the crime of conspiracy.

## Extortion – Elements of the Offense

To find a defendant guilty of extortion in violation of the Hobbs Act, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

| | |
|---|---|
| First: | that the defendant knowingly and willfully obtained property from Crash Line with Crash Line's consent; |
| Second: | that the defendant induced Crash Line's consent by knowingly and intentionally using Crash Line's fear of economic harm; |
| Third: | that the defendant's use of Crash Line's fear of economic harm was wrongful; and |
| Fourth: | that the defendant's conduct affected interstate or foreign commerce. |

## First Element – Knowingly and Willfully Obtaining Property

The first element of extortion requires the government to prove beyond a reasonable doubt that the defendants knowingly and willfully obtained property from the alleged victim, for themselves or for a third party identified by the defendants, and that they did so with the alleged victim's consent.

A defendant acts "knowingly" when he acts consciously and is aware of his actions, realizes what he is doing and what is happening around him, and does not act because of ignorance, mistake, or accident. A defendant acts "willfully" when he acts voluntarily and intelligently, with the specific intent that the underlying crime be committed—that is to say, with bad purpose, either to disobey or disregard the law—and does not act because of ignorance, accident, or mistake.

These terms concern a defendant's state of mind.  The burden to prove the relevant

mental state, as with all other elements of a crime, rests with the government.  Because it is

impossible to prove through direct evidence the inner workings of the human mind, it is often

necessary to resort to circumstantial evidence.  Thus, in deciding whether something is done

knowingly and willfully, you may consider what a defendant said or did, the facts and

circumstances surrounding his conduct, and any reasonable inferences to be drawn from those

facts and circumstances.  It is entirely up to you, however, to decide what facts are proven by the

evidence received during this trial.

The term "property" includes money and other things of value.  The property must,

however, be capable of being transferred or sold from one person to another.  Here, the

government alleges that the "property" consisted of money paid as wages and benefits to nine

people who worked at the September 2014 Boston Calling festival under a contract with Local

11.

The government must prove that the defendants "obtained" the property at issue.  It is not

sufficient for the government to show that someone was deprived of property or that the

defendants interfered with someone's property rights.  The government must prove that the

defendants acquired the property, either by receiving it themselves or by directing its transfer to a

third party they identified, regardless of whether the defendants received a benefit from the

transfer.

The government also must prove that the defendants obtained the property at issue with

Crash Line's consent, a term which you should give its ordinary meaning.

So, to establish the first element of extortion, the government must prove beyond a

reasonable doubt that the defendant you are considering acted knowingly and willfully; that the

wages and benefits at issue were capable of being transferred or sold; that the defendant you are considering directed the transfer of the wages and benefits to a third party he identified; <u>and</u> that this transfer was accomplished with Crash Line's consent.

### Second Element – Consent Induced by Use of Fear of Economic Harm

The second element of extortion requires the government to prove beyond a reasonable doubt that the defendants induced Crash Line's consent to pay the wages and benefits at issue by using Crash Line's fear of economic harm.  In particular, the government alleges that the defendants exploited Crash Line's fear of economic harm by implicitly threatening certain permits and approvals related to the September 2014 Boston Calling festival, as well as the prospect of a license extension allowing festivals beyond 2017, in order to induce Crash Line to hire workers through Local 11 for the September 2014 festival.

You should give the words used in this element their common and ordinary meaning and understand them as you normally would.  However, several components of this element require explanation.  I'll talk about what "economic harm" means first, and then I'll explain what it means to use fear, and to induce consent.

You must decide whether the government has proven beyond a reasonable doubt that the defendants threatened, and Crash Line reasonably feared, "economic harm."  Economic harm can mean financial harm, or a loss of the ability to fairly compete for future business opportunities.  In this case, economic harm can include the financial consequences resulting from: 1) the denial of a permit to which Crash Line was otherwise entitled; 2) the refusal to consider fairly requests by Crash Line related to alcohol or event hours for the September 2014 festival; or 3) the refusal to consider fairly a request by Crash Line to use City Hall Plaza for future events.

However, economic harm does <u>not</u> include the loss of a hoped-for future benefit to which there is no legal entitlement, or the loss of preferential treatment to which Crash Line is not legally entitled.  Crash Line's wish to secure an agreement guaranteeing them the exclusive right to hold concerts on City Hall Plaza in the future is such a hoped-for future benefit and does not qualify as economic harm for purpose of the Hobbs Act.

You also must decide whether the government has proven beyond a reasonable doubt that the defendants "used" Crash Line's "fear" of the sort of harm I have just explained.  The government is not required to prove that there was an <u>explicit</u> threat of harm.  Threats may be made implicitly, by statements made or by physical acts or gestures.  Whether a statement, physical gesture, or act by the defendant was a threat depends on the surrounding circumstances. In order to find that one or both defendants used or exploited Crash Line's fear of economic harm, you must find not only that the defendant you are considering <u>conveyed</u> an implicit threat of economic harm as I have defined that term for you, but also that the defendant <u>intended</u> to convey such a threat.

In considering these questions, you may factor in the defendants' positions as public officials.  Public officials arrange meeting with constituents and act on their concerns by making requests or recommendations on their behalf all the time.  Balancing the interests of constituent groups and advocating for the public interest is the everyday business of government officials. Conscientious public officials are expected to bargain and press demands vigorously on behalf of the government and the public.

As I explained previously when defining the terms "knowingly" and "willfully," mental states like intent ordinarily cannot be proven directly.  In determining what a defendant intended at a particular time, you may consider any statements made or acts done or omitted by that

defendant, and all other facts and circumstances received in evidence that may aid in your determination of his intent.  You may infer, but you certainly are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.  You must assess the intent of each defendant individually.

Next, you must decide whether Crash Line understood the statements and acts of the defendant you are considering as a threat which caused or exploited Crash Line's fear of economic harm.  "Fear" means a state of anxious concern, alarm, or worry over an expected harm.  Here, the "expected harm" at issue is economic harm, as I have explained.  Whether Crash Line feared such harm must be determined considering the facts that existed at the time of the defendants' actions.  The government need not prove that the defendants created or caused Crash Line's fear.  This element could also be satisfied by evidence proving beyond a reasonable doubt that Crash Line had a preexisting fear of economic harm as I have explained that term, that the defendants were aware of Crash Line's fear, and that the defendants intended to exploit that fear.  The government is not required to prove that the defendants had the actual ability to produce the economic harm Crash Line allegedly feared, but the evidence must establish beyond a reasonable doubt that Crash Line's fear—and its belief that the defendants could and would cause such harm if Crash Line failed to comply with their demands—were reasonable under the circumstances.

These questions require you to assess the state of mind of the alleged victim.  Corporations like Crash Line make decisions and act through their officers and agents.  You should consider the testimony of Crash Line's officers and agents—Brian Appel, Michael Snow, and Jesse DuBey—using your common sense to decide what weight to give such testimony, as you determine whether Crash Line acted because of fear and, if so, what exactly it feared.

Let me explain to you the relationship between threats and fear.  If you find the evidence establishes that Crash Line did, in fact, have a reasonable fear of economic harm based on the statements and actions of one or both defendants, Crash Line's fear alone is not sufficient to establish that either defendant intended to convey an implicit threat.  It is one factor you may consider in determining each defendant's intent, but it does not on its own prove that intent. Conversely, if you find the evidence establishes that a defendant intended to convey an implicit threat of a certain type of economic harm, as I have explained that term, that is a factor you may consider in determining whether Crash Line feared such harm, though it does not on its own prove such fear.

Finally, you must decide whether the government has proven beyond a reasonable doubt that threats of economic harm made by one or both defendants <u>induced</u>—or caused—Crash Line to comply with their alleged demand.  It is not enough to show that Crash Line's decision to hire workers under a contract with Local 11 was made for a business reason, for example, to secure an advantage or avoid a problem or economic loss.  Rather, the government must prove that, but for alleged threats of economic harm as I have defined those terms, Crash Line would not have hired workers under a contract with Local 11.

So, to establish the second element of extortion, the government must prove beyond a reasonable doubt that the defendant you are considering intended to threaten and did implicitly threaten economic harm as I explained that term; that Crash Line perceived such a threat and reasonably feared such a harm; and that fear of such harm, arising from the threat, caused Crash Line to hire workers under a contract with Local 11.

**Third Element – Wrongfulness**

The third element of extortion requires the government to prove beyond a reasonable doubt that the defendants' alleged use of fear of economic harm was "wrongful."

Threatening economic harm or using the fear of economic harm in order to induce another person to part with property is not necessarily "wrongful."  That is because fear of economic harm is a part of many legitimate business transactions.  Such fear also may be a necessary consequence of many legitimate exercises of authority by public officials.  For a defendant's use of fear of economic harm to be "wrongful" for purposes of the Hobbs Act, the government must prove beyond a reasonable doubt that the defendant used "wrongful means" to achieve a "wrongful purpose."

A defendant uses "wrongful means" if he makes threats of economic harm that he knows are prohibited.  If an alleged victim has a preexisting right to be free from a defendant's threat of economic harm, and the defendant knows it but makes such a threat anyway, then that defendant has used a "wrongful means."

You've heard evidence about Crash Line's irrevocable license agreement with the City. The irrevocable license agreement neither required nor prohibited the use of union labor.  The agreement also did not preclude any City official from asking Crash Line to consider hiring union workers, or from trying to help resolve a dispute involving a union's request for work.

The government also must prove beyond a reasonable doubt that a defendant who knowingly used wrongful means did so to achieve a "wrongful purpose."  A wrongful purpose is an illegitimate or illegal objective.  When determining whether a defendant's objective was legitimate or illegitimate, you should consider the objective that he was trying to achieve, and not the means used to achieve it.

A defendant pursues a wrongful purpose when he seeks to obtain property for himself to which he knows he has no lawful claim, or where he seeks to obtain property for a third party to which the defendant knows that neither he nor the third party has a lawful claim.  A union and its members may identify work being performed by non-union workers or volunteers that could be performed by union members, and then attempt to obtain that work.  They may also leaflet or protest to informing the public that an employer is not using union workers or is not following area standard wages and benefits.

Wrongful purposes include accepting money in exchange for the exercise of public authority.  Seeking to obtain real work for qualified people is not a wrongful purpose, even if the work was unwanted or unneeded by the employer.  It is not a wrongful purpose under the Hobbs Act for a public official to assist or favor his constituents or political supporters, or to act in the hopes of securing future political support.

These questions require assessing the mental state of each defendant.  As I've explained, in determining what a defendant knew at a given time, or what his purpose was in acting, you may consider statements made or acts done or omitted by that defendant, as well as all other facts and circumstances received in evidence that may aid in your determination of his knowledge or purpose.  And again, you must assess the mental state of each defendant individually.

So, to establish the third element of extortion, the government must prove beyond a reasonable doubt that the defendant you are considering made threats of economic harm that he knew were unlawful, and that he did so to achieve an illegitimate objective.

**Fourth Element – Affecting Commerce**

The last element of extortion requires the government to prove beyond a reasonable doubt that the defendants' conduct affected interstate or foreign commerce in any way or degree.

The term "interstate or foreign commerce" means commerce between any point in a state and any point outside the state or between any point within the United States and any point outside of the United States.

If you decide that the defendants' conduct—that is, their allegedly wrongful use of fear of economic harm to induce Crash Line to hire workers under a contract with Local 11—resulted in any effect at all on interstate or foreign commerce, then that is enough to satisfy this element. The effect can be minimal or subtle, or even potential. In other words, you do not have to find that interstate or foreign commerce was greatly affected, or was actually affected. However, if the defendants finished their actions, and did all they intended to do, and you determine there has been no effect on interstate or foreign commerce, then you cannot find the defendants guilty.

It does not matter for purposes of this element whether the effect on commerce was harmful or beneficial, nor does it matter whether the defendants intended or anticipated an effect on commerce. The government satisfies its burden as to this element when it proves beyond a reasonable doubt any effect on interstate or foreign commerce, whether or not the effect was harmful, and whether or not the defendants intended such an effect.

For example, if a successful extortion of money would prevent the use of those funds to purchase articles which travel through interstate or foreign commerce, that would be an effect on interstate or foreign commerce sufficient to satisfy this element. You have heard testimony in this case that Crash Line has investors, sells tickets, books acts, and uses vendors from beyond Massachusetts. If you decide to credit that testimony, and if you find that the government has proven beyond a reasonable doubt that the defendants' conduct in any way affected Crash Line's ability to conduct such business, you may conclude that this element has been proven.

**Aiding and Abetting**

I have explained to you what the government must do to prove that Mr. Brissette or Mr. Sullivan personally committed the extortion charged in Count 2.  There is another way the government can prove the defendants guilty of Count 2—by proving, beyond a reasonable doubt, that Mr. Brissette or Mr. Sullivan aided and abetted the commission of the extortion.

To "aid and abet" means to intentionally help someone else commit a crime.  To establish aiding and abetting, the government must prove two things beyond a reasonable doubt:

| | |
|---|---|
| First: | that one of the defendants committed the crime of extortion; and |
| Second: | that the defendant you are considering consciously shared the other defendant's knowledge of the extortion, intended to help him, and took part in the endeavor by taking an affirmative action to make it succeed. |

Here, this means that the government must prove beyond a reasonable doubt that the defendant under consideration willfully participated in the alleged extortion, knowing the nature of the crime and intending that the extortion be achieved.

To be found guilty as an aider and abetter, a defendant need not commit the extortion, be present when it is performed, or be aware of the details of its execution.  However, a general suspicion that an unlawful act may occur or that something criminal is happening is not enough.  Mere presence at the scene of the extortion and/or knowledge that the extortion is being committed are also not sufficient to establish aiding and abetting.  But you may consider these among other factors.

**Conspiracy**

Both defendants are charged in Count 1 with conspiring to commit extortion.  A conspiracy is a criminal agreement among two or more people to violate the law.

To find a defendant guilty of conspiracy to commit extortion, you must be convinced that the government has proven both of the following elements beyond a reasonable doubt:

First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to commit extortion as I have defined it for you; and second, that the defendant you are considering willfully joined in that agreement knowing of its criminal goal and intending to help it succeed.

As to the first element, an agreement forming the basis for a conspiracy can be spoken or unspoken. The conspiracy does not have to be a formal agreement or plan in which everyone involved sat down together and worked out all the details. However, the government must prove beyond a reasonable doubt that those who were involved shared a general understanding about the crime. Mere similarity of conduct among various people or the fact that they may have associated with each other or discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy, although you may consider such factors.

As to the second element, the government must prove two types of intent beyond a reasonable doubt before a defendant can be said to have willfully joined the conspiracy: an intent to agree; and an intent, *whether reasonable or not*, that the underlying crime—here, extortion—be committed. Mere presence at the scene of a crime is not enough on its own to establish that a defendant willfully joined a conspiracy, but you may consider it among other factors.

I have already explained what it means to act "willfully." Proof that a defendant willfully joined in a criminal conspiracy must be based upon evidence of his own words or actions. You need not find that a defendant agreed specifically to or knew about all the details of the crime, that he knew every other co-conspirator, that he participated in each act of the agreement, or that

he played a major role, but the government must prove beyond a reasonable doubt that he knew the essential features and general aims of the unlawful venture.  Even if a defendant was not part of the agreement at the very start, he may be found guilty of conspiracy if the government proves beyond a reasonable doubt that he willfully joined the agreement later.  On the other hand, a person who has no knowledge of a conspiracy, but simply happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

The government does not have to prove that the conspiracy succeeded or was achieved. The crime of conspiracy is complete upon the agreement to commit the underlying crime.

## Acts and Statements of Co-Conspirators

I have admitted into evidence against each defendant certain acts and statements of the other defendant because the government alleges the defendants were members of the charged conspiracy, and the acts and statements I admitted are alleged to have occurred during and in furtherance of that conspiracy.

I told you earlier that a conspiracy is an agreement; in that respect it is like a partnership in crime.  As in other partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member of the conspiracy becomes an agent for his or her co-conspirators in carrying out the conspiracy.

Therefore, if you find beyond a reasonable doubt that both defendants were members of the conspiracy charged in this case, then any acts done or statements made in furtherance of the conspiracy by one defendant, may be considered against the other defendant.  This is so even if such acts were done or such statements were made in one defendant's absence and without his knowledge.  However, if the acts were done or the statements were made by a defendant you find

was not a member of the conspiracy, or if you find that they were not done or said in furtherance of the conspiracy, then you may not consider them as evidence against the other defendant.

The government does not claim that Local 11 or any of its representatives, or that Crash Line or any of its representatives, were co-conspirators with the defendants in this case.

# PART III

That concludes my instructions on the law to apply in your deliberations. Now I come to the last part of the instructions, the rules for your deliberations.

## Foreperson's Role and Unanimity

When you retire to the jury room, you will discuss the case with your fellow jurors to reach agreement, if you can do so. The first thing you must do when you retire to the jury room is select a foreperson. This will be the first decision you make together, as a jury. In making your choice, you should consider the role of the foreperson. The foreperson will have the same voice and the same vote as the other deliberating jurors. The foreperson will act as the moderator of the discussion and will serve as the jury's spokesperson. The foreperson's most important obligation is to ensure that any juror who wishes to be heard on any material issue has a full and fair opportunity to be heard by his or her fellow jurors. Your foreperson will preside over your deliberations and will speak for you here in court. However, your foreperson's vote or opinion as to what the verdict should be is not entitled to any greater weight than that of any other member of the jury. Each of you, including the foreperson, must treat each other, and each other's opinions, with respect. You are all equal in the jury room.

Your verdict must be determined solely on the evidence, or lack of evidence, presented against each defendant on each count. Your verdict as to each count and each defendant must be unanimous; that is, all of you must agree.

## Reaching Agreement

Each of you must decide the case for yourself, but you should do so only after considering all of the evidence, discussing it fully with your fellow jurors, and listening to the

views of the other jurors.  Do not be afraid to change your opinion if you think you are wrong, but do not come to a decision simply because other jurors think it is right.

It is important that you reach a verdict if you can do so conscientiously.  There is no reason for you to think that another jury would be better qualified than you to decide this case.  If it looks at some point as if you may have difficulty in reaching a unanimous verdict, and if a greater number of you are agreed on a verdict, the jurors in both the majority and the minority should reexamine their positions to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the jurors who disagree with them.  You should not hesitate to reconsider your views from time to time and to change them if you are persuaded that doing so is appropriate.

It is important that you attempt to return a verdict, but only if each of you can do so after having made your own conscientious determination.  Do not surrender an honest conviction as to the weight and effect of the evidence simply to reach a verdict.

## Communication with the Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through the jury officer outside your door.  The note must be signed by your foreperson or by one or more members of the jury.  None of you should ever attempt to communicate with me on anything concerning the case except by a signed writing.  I will communicate with any member of the jury on matters concerning the case only in writing, or orally here in open court. If you send out a question, I will consult with the parties before answering it, and I will do so as promptly as possible.  You may continue with your deliberations while waiting for the answer to any question.

Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

## Verdict Form

I now want to show you what is called the verdict form.  This is simply the written notice of the decision you will reach in this case.

[***Show form***.]

As you will see, each count is set forth separately on the verdict form.  Under each count, there is space for you to indicate your separate verdicts as to Mr. Brissette and Mr. Sullivan.  As I've said, you must consider each count separately, and you must return a separate verdict as to each defendant on each count.

After you have reached unanimous agreement on a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the jury officer outside your door that you are ready to return to the courtroom.

After you return to the courtroom, your foreperson will deliver the completed verdict form as directed in open court.

## Final Points

Members of the jury, it is now time for me to submit the case to you.  The exhibits that were admitted in evidence will be sent back with you to consider in your deliberations.  As I said, I also will submit to you a written copy of this charge.  I want to caution you, however, not to dwell on any one portion of it, if you decide to review it at all, because you must consider these instructions as a whole.  Also, the copy of the charge is for all of you to share; each of you are equally entitled to read and consider the written charge as you see fit.

Once you have started your deliberations, all of you must be together at all times when you are deliberating.  Whenever you need a recess for any purpose, your foreperson may declare one.  Do not discuss the case during a recess in your deliberations.  All discussion of the case should occur only when you are all together and your foreperson has indicated that deliberations may proceed.  This ensures that everyone in the jury has an equal opportunity to participate and to hear all of what other members of the jury have to say.

Thank you for your attention.  You may now go to the jury room and begin your deliberations.