UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) <br> ) <br> ) |
| v. | ) Case No. 16-cr-10137-LTS <br> ) |
| KENNETH BRISSETTE and <br> TIMOTHY SULLIVAN | ) <br> ) <br> ) |

**TIMOTHY P. SULLIVAN'S OPPOSITION TO THE GOVERNMENT'S MOTION TO VACATE THE COURT'S FINDINGS OF PROSECUTORIAL MISCONDUCT**

Timothy P. Sullivan opposes the Government's Motion To Vacate Findings Of Misconduct In Its Order Granting Defendant's Motion for New Trial because it is a futile effort to put the genie back in the bottle. The Government's Motion addresses a portion of the Court's order that is academic only because the condition making the Rule 33 ruling operative can never be realized now that the Government properly decided not to appeal the judgment of acquittal. The Government's motion itself concedes as much, preceding its Argument by stating "Finally, given the government's decision not to appeal the judgments of acquittal, the Court's findings are now immaterial to the disposition of the case." Document 430, p. 2.

Despite the immateriality, the Government would have the Court vacate the portion of the order granting the Rule 33 motions because it is said to be factually and legal unsupportable (Document 430, p. 2.), a position which Mr. Sullivan vigorously disputes. The Court's comprehensive and thoughtful 90-page Order contained an unassailable review of the testimony at trial—with record citations to every point— revealing that the government failed to prove three separate elements of the crime. The Order carefully detailed the shifting sands of the Government's prosecution theory and the numerous misrepresentations made by the prosecutor in her closing argument. The findings of prosecutorial misconduct inform the public about the

basis for the Court's decision and shine necessary sunlight on the improper tactics used by the government in its closing and throughout the prosecution of the case.

Because the Government cannot credibly contest the factual findings made by the Court, it intimates that the Court was biased against it by making such statements as "That the Court does not approve of a prosecution or agree with the verdict does not provide a basis to level charges of misconduct where none occurred." Doc # 430 at 11. The Government's motivation, methods, and tactics are not beyond the oversight of the Court.  What the Government refuses to acknowledge is that the verdict was set aside not because the Court "disagreed" with the verdict but because *no crime was committed.* From the outset, the government labeled Messrs. Sullivan and Brissette as extortionists even though they received nothing and made no threats in their dealings with the Boston Calling concert promoters.[1]  As the Court found in its well-reasoned Order, they are factually and legally innocent of any wrongdoing.  The Order accomplished justice in a case that never should have been brought in the first place.[2]

Although now acquitted, Messrs. Sullivan and Brissette were burdened for years with the ever-present fear of being sent to prison, being separated from family, and the loss of their jobs and reputations while facing ever increasing legal fees that inevitably came in a case that was "hard fought, zealously defended and carefully overseen the Court." Document 430, p. 1.  The findings the Government wishes away are important in any effort to restore their careers and address their long-suffered injustice.  It matters, for instance, that neither Mr. Sullivan nor Mr. Brissette explicitly or implicitly threatened to pull permits previously issued to Boston Calling

---

[1] The government indicted Mr. Sullivan based on his attendance at one meeting, alleging that he and Mr. Brissette "insisted" that Crash Line hire union workers and implying that they threatened Crash Line's permits.  Document 177 at 5.  The indictment did not quote anything that Mr. Sullivan or Mr. Brissette allegedly said to convey or imply a threat because it never happened.

[2] "Although the government technically loses its case, it has really won if justice has been done." Robert Jackson, "The Federal Prosecutor," 24 *Journal of American Judicature Society* 18 (1940).

labor.  It matters, from a reputational standpoint, that this case involved no allegations or evidence of actual violence, threats of violence, or menacing behavior by either defendant.  And it matters from an employment related perspective that Messrs. Sullivan and Brissette were indicted for actions solely as city officials and that city officials acting as proprietors of City Hall Plaza have leeway to require the use of union labor.  Mr. Sullivan can no more wish the genie back in the bottle than the Government.  "The moving finger writes and having writ moves on."[3]  By leaving its finding of misconduct intact, the Court will allow the parties to also move on, and, equally importantly, allow the public to know the truth.

The Government's Motion to Vacate the Findings, on the other hand, perpetuates the harm its misguided prosecution has caused Messrs. Brissette and Sullivan.  Despite all the improprieties chronicled in the Order on Post-Trial Motions and the contemporaneously issued "Order on Motion for Sanctions" (Document 415), the Government's Motion baldly states the belief that they were properly convicted.  Document 430, p. 2.  Although it then notes that the Government has elected not to appeal the judgment of acquittal, id., the Argument that follows appears to have been written in anticipation of an appeal not taken.  It opens with a statement of the standard typical of appellate briefs.  Document 430, pp. 2 -3.  It then lapses into a discussion about reversible error, asserting falsely that with respect to all but one, the improprieties cited by the Court were not noted by either defense counsel or the Court during or after the closings.[4]  The truth is that counsel did timely object to the first two improper sets of statements raised in the Government's Motion, i.e., the State Ethics Law addressed in its Argument IA and Labor Law addressed in Argument IB.  Document 408 at 98-99 and 102.  While Government now

---

[3] Edward FitzGerald, *Rubáiyát of Omar Khayyám: A Critical Edition*, University of Virginia Press, 1997.
[4] If nothing else, the Government's use of italics in the sentence *"Nothing* in the record supports the conclusion of misconduct." (Document 430, p. 3) indicates someone listened to Mr. Cintolo as he arose following the prosecutor's opening salvo.

3

seeks to discount those objections because they were made at sidebar, the truth is that this Court cited to those very objections on the second page of its prosecutorial misconduct discussion, in the passage headed "Legal Standards." Document 414 at 75.

In that passage, the Court quoted language from United States v. French, 904 Fd.3d 111, 124 (1st Cir. 2018). It did so in connection with the discussion of Legal Standards which ends with the oft quoted words from Berger v. United States, 295 U.S. 78, 88 (1935). They are worth repeating to the office of the United States Attorney for this District:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all, and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

The Motion to Vacate cites to the same page of French but concludes its discussion of standards with a citation to United States v. Belanger, 890 F. 3d 13, 34 (1st Cir. 2018). Both cases involved appeals by defendants seeking to vacate their convictions, not appeals by prosecutors from the allowance of Rule 29 or Rule 33 motions. The relevant paragraph in French reads:

> Finally, Russell argues that several statements the prosecutor made during closing argument amounted to misconduct necessitating a new trial. We are unconvinced. Russell concedes that he did not object contemporaneously to the statements and that review is thus for plain error only. When faced with a claim that a prosecutor's comments during a closing statement were improper, we vacate a conviction only if the remarks "so poisoned the well that the trial's outcome was likely affected." United States v. Kasenge, 660 F.3d 537, 542 (1st Cir.2011) (quoting United States v. Henderson, 320 F.3d 92, 107 (1st Cir.2003)). In assessing this question, we consider the severity of the conduct and whether it was deliberate,

> the context, the presence of curative instructions and their likely effect, and the strength of the prosecution's case. Id.

United States v. French, 904 F.3d 111, 124 (1st Cir. 2018), cert. denied sub nom. Russell v. United States, 139 S. Ct. 949, 203 L.Ed.2d 137 (2019).

Defendant Belanger's "beef with the proceedings" included a "supposed problem" with an analogy in the prosecutor's closing between withdrawing from a conspiracy and getting off a train. 890 F. 3d at 34-35. The "supposed problem" was that the prosecutor failed to use the word "or" in describing telling co-conspirators "I'm out, I'm done" as an example of withdrawal and the sentence "you go to the cops," which "improperly advised the jury that for withdrawal to apply, the law requires not just a confession to authorities but also notification to each of the coconspirators." Id. The Court of Appeals rejected Belanger's contention that this was error:

> But from where we sit as an appellate court with considerable distance from the original proceedings, it is not abundantly clear at all whether the lack of the word "or" represents some misstatement of the law or whether, for example, the prosecutor was simply taking a dramatic, disjunctive pause before laying out the alternative means by which Belanger could withdraw.

Id. at 35.

This Court is not an appellate court sitting on high, reviewing a denial of relief from an ambiguous, dramatic comment. Having presided over this case for three years, this Court is best suited to evaluate the evidence and the conduct of the prosecution. This Court's view of the significance of the improprieties it observed is a message that the United States Attorney's office should heed. This is especially so where this is just one in a string of recent cases in which federal prosecutors in this district have engaged in improper tactics in order to achieve a "win."[5]

---

[5] See Walter Pavlo, *Federal Prosecutors' High Profile Loss in Massachusetts Seems To Be Trend of Misconduct*, Forbes (February 15, 2020), available at
https://www.forbes.com/sites/walterpavlo/2020/02/15/federal-prosecutors-high-profile-loss-in-massachusetts-seems-to-be-trend-of-misconduct/#75d237884ac3.

In <u>United States v. DeCicco</u>, 1:17-cr-10092-NMG (Document 386), defense counsel alleged disturbing tactics and misconduct by the Government that parallel the conduct in this case, including making repeated material misstatements to the Court, violating discovery obligations, and bringing the case in order to pressure Mr. DeCicco into cooperating against a higher profile target.  In <u>United States v. Sidoo, et al.</u>, 1:19-cr-10080 (Document 972), defense counsel recently filed a motion to dismiss based on prosecutorial misconduct, in which the government is said to have failed to investigate and timely disclose as exculpatory evidence proof that federal agents coerced its star witness into fabricating evidence.

Through luck of the clock, the government avoided a reckoning with its misbehavior in <u>DeCicco</u> as the defense motion was found to be untimely filed.  And it is yet to be determined what will happen in <u>Sidoo</u>.  The Government should not succeed in hitting the "delete button" on its misconduct here.  For the government to repair any reputational damage caused by the Court's findings of misconduct, it must learn from history, not erase it.  The Court should not change one word of its decision—not only because to do so would be unfair to the defendants and irreconcilable with justice, and certainly not to assuage its well-deserved rebuke of the Government—but for the simple and undeniable reason that the Court is right.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the Government's motion to vacate its findings of prosecutorial misconduct underlying the new trial order.

Respectfully submitted,

TIMOTHY SULLIVAN,
By their attorneys,

/s/ *William J. Cintolo*
/s/ *Thomas R. Kiley*

*/s/ Meredith G. Fierro*
_____
Thomas R. Kiley (BBO # 271460)
William J. Cintolo (BBO # 084120)
Meredith G. Fierro (BBO # 696295)
CEK Boston, P.C.
One International Place, Suite 1820
Boston, MA 02110
617.439.7775 (tel)
617.330.8774 (fax)
wcintolo@ceklaw.net
tkiley@ceklaw.net
mfierro@ceklaw.net

Dated: March 27, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, March 27, 2020, a copy of the foregoing document has been served via electronic filing upon all registered parties.

*/s/ Meredith G. Fierro*
Meredith G. Fierro