UNITED STATES DISTRICT COURT
DISTRICT OFMASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br> )<br>VS. )<br> )<br>TIMOTHY SULLIVAN, et. al., )<br>Defendant. )<br>_____ ) | Crim. No. 16-cr-10137-LTS |

**TIMOTHY P. SULLIVAN'S APPLICATION FOR FEES AND EXPENSES
UNDER THE HYDE AMENDMENT**

The prosecution of Timothy P. Sullivan is a textbook example for the application of the "Hyde Amendment" Pub. L.105–119, Title VI, §617, November 26, 1997 III stat.2519.  Mr. Sullivan has been acquitted after three years and eight months of litigation.  He is a prevailing party who fits squarely within the parameters of 28 U.S.C. 2412 and has outstanding obligations to lawyers amounting to more than a million dollars, both as attested in the Affidavit of Thomas R. Kiley and its Exhibits.[1]  Compounding those obligations, he is unemployed, based in part of the pre-trial insistence of the United States that he yield his city employment.  The record before this court establishes that throughout the course of the proceedings the position of the United States was constantly shifting but always vexatious, frivolous or in bad faith, as more fully developed in the accompanying memorandum of law.

No special circumstances exist which would make an award of a reasonable attorneys' fees and other litigation expenses unjust. While one could arguably assert that the proceedings were unduly and unreasonably protracted within the meaning of 28 U.S.C. §2412(d)(1)(C), that was a function of what amounted to an interlocutory appeal by the United States, not conduct of Mr. Sullivan, and while the United States Attorney ultimately made the right decision not to

---

[1] Both the Affidavit of Thomas R. Kiley and the Exhibits are being filed with the Court under seal to preserve privileged attorney-client communications and confidential client financial information.

appeal the judgment of acquittal, it came with the reassertion of a willingness to bring cases in the future based on the same frivolous theories advanced in this case.  As evidenced by the amicus brief of U.S. Representatives Clark, Capuano, Kennedy, and Lynch, and the full-page advertisements in the state's major media outlets by scores of nonprofit advocacy groups, these theories were not only frivolous but also threatened legitimate governmental advocacy.  It is one thing to pursue a "novel theory" or "ambitious case" and quite another to strike the kind of foul blows that Mr. Sullivan has endured at the hands of the prosecution.

An award of reasonable attorneys' fees and expenses to Mr. Sullivan is the appropriate capstone to a case which should never have been brought.  The prosecution of Mr. Sullivan was never justifiable.  He was not named in the initial indictment, which had as its foundation evidence about "Top Chef" and the propriety of withdrawing filming permits. The government from the outset knew that Mr. Sullivan had nothing to do with Top Chef and/or the permitting process. The government knew when it indicted Mr. Sullivan that he had no dealings with Brian Appel, Michael Snow, Jesse DuBey or any other representative of Boston Calling from the inception of the supposed conspiracy until a meeting on September 2, 2014, at which he chose his words carefully and made no threatening statements.  The Government knew that Boston Calling's lawyers had unsuccessfully sought a contractual provision that would have prohibited city officials from asking them to use union workers.  The prosecutors knew from the inception of the case that Mr. Sullivan received no personal benefit from the hiring of members of IATSE Local 11, and that the members of IATSE Local 11 performed actual work in return for the property they received. Knowing all these things and more, the United States Attorney obtained indictments charging Mr. Sullivan with Hobbs Act extortion and pressed on with the prosecution when it had become clear that there was no substance to the position it was taking.

Despite the fatal defects in the case that were known to the government from the earliest days of its Boston Calling inquiries, Mr. Sullivan does <u>not</u> seek an award from this Court encompassing all the fees and expenses during the period he required representation as not all the fees charged and expenses incurred can reasonably be ascribed to the Goverment's vexatious, frivolous, and bad faith prosecution.

Mr. Sullivan does <u>not</u> seek an award from this Court for services rendered to him by Cosgrove, Eisenberg & Kiley, P.C. between the Government's first contact with him in August 2015 until the First Superseding Indictment charging him was filed.  Mr. Sullivan seeks an award only pertaining to services rendered and expenses incurred in connection with the defense of those charges before this Court.

Mr. Sullivan does <u>not</u> seek an award encompassing the full amounts owed to Attorneys Traini or Kelley for their services in this matter.  Their services were required because Cosgrove, Eisenberg & Kiley, P.C. represented three additional City of Boston employees in the investigation leading up to the First Superseding Indictment.  Two of those individuals were called as trial witnesses by the Government and stand-by counsel was required to cross-examine them.  Only Attorney Kelley appeared and cross-examined.  Mr. Sullivan seeks an award reflecting one third of Mr. Kelley's attested time entries and one sixth of Mr. Traini's.  Their attested time entries reflect services rendered <u>after</u> the issuance of the First Circuit's decision in March 2019.

Mr. Sullivan does <u>not</u> seek an award including any of the time charges or expenses incurred while the Government's appeal of this Court's dismissal was pending before the First Circuit Court of Appeals.  The appeal protracted the proceedings and was vexatious to Mr. Sullivan, but is not characterized here as legally frivolous or in bad faith.

Mr. Sullivan does <u>not</u> seek an award for services rendered by CEK Boston, P.C. (the undersigned's current employer) after this Court's Memorandum & Order on Post-Trial Motions because those services were largely addressed to collateral matters rather than the criminal defense before this Court.

Mr. Sullivan <u>does</u> apply for an award of $502,553 reflecting: $475,563 for 3,170.42 hours of work by Cosgrove, Eisenberg & Kiley, P.C. in defending this case at a blended hourly rate of $150 and $26,970 for out of pocket expenses incurred by Cosgrove, Eisenberg & Kiley, P.C. in performing those services.

Mr. Sullivan also <u>does </u>seeks an award of $28,305 for services rendered and expenses incurred by Attorney James Kelley after March 28, 2019, and $9,243.75 for services rendered and expenses incurred by Attorney Anthony M. Traini for the same time period.

> Respectfully submitted,
>
> TIMOTHY SULLIVAN,
> By his attorneys,
>
> */s/ Thomas R. Kiley*
>
> _____
> Thomas R. Kiley (BBO # 271460)
> William J. Cintolo (BBO # 084120)
> Meredith G. Fierro (BBO # 696295)
> CEK Boston, P.C.
> One International Place, Suite 1820
> Boston, MA 02110
> 617.439.7775 (tel)
> 617.330.8774 (fax)
> tkiley@ceklaw.net
> wcintolo@ceklaw.net
> mfierro@ceklaw.net

Dated:  April 10, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, April 10, 2020, a copy of the foregoing document has been served via electronic filing upon all registered parties.

                                                     */s/ Thomas R. Kiley*
                                                     Thomas R. Kiley